THE HONORABLE RICHARD A. JONES

# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED FINANCIAL CASUALTY COMPANY,<br>　　　　Plaintiff,<br><br>　　v.<br><br>DIRECTIONAL SOLUTIONS, LLC, et al.,<br>　　　　Defendants. | No. CV 09-162RAJ<br><br>ORDER |

## I.   INTRODUCTION

This matter comes before the court on Defendants' motion for abstention and dismissal (Dkt. #41). No party requested oral argument, and the court finds the motion suitable for resolution on the basis of the parties' briefing and supportive evidence. For the reasons explained below, the court GRANTS the motion (Dkt. # 41).

## II.   BACKGROUND

On June 19, 2007, a group of pedestrians exited a bus and stood on a street corner in Kenmore, Washington. While they were there, a multiple-car collision occurred. One of the pedestrians, Kathy Cook, died at the scene of the accident, and others were injured.

ORDER - 1

Some of the pedestrians ("Pedestrians") filed lawsuits in King County Superior Court in 2008, alleging that Defendant Hugo Cardona-Lopez, who was driving one of the cars in the collision in the course of his employment with Defendant Directional Solutions, LLC ("Directional Solutions"), caused the collision. An automobile insurance policy issued by Plaintiff United Financial Casualty Company ("UFCC") insured both Mr. Cardona-Lopez and Directional Solutions, and the policy contains a $1 million combined single limit. Mr. Cardona-Lopez and Directional Solutions tendered the Pedestrians' lawsuits and claims to UFCC for defense and indemnification. UFCC offered the $1 million limit toward settlement of the Pedestrians' claims and lawsuits, but the Pedestrians rejected the offer, arguing that because the collision resulted from two accidents, the limit available under the UFCC policy was $2 million.

UFCC then filed a declaratory judgment action in this court in February 2009, seeking a judicial determination of the amount of coverage available to pay the Pedestrians' claims, and naming as Defendants the Pedestrians, Directional Solutions, and the Cardona-Lopezes. In June 2009, Directional Solutions included a counterclaim with its Answer, seeking monetary damages for bad faith.

In approximately July or August 2009, the Pedestrians entered into a settlement agreement with Directional Solutions and the Cardona-Lopezes regarding the King County lawsuit. The settlement provided for the assignment of the claims of Directional Solutions and the Cardona-Lopezes against UFCC to the Pedestrians. In December 2009, the state court granted leave to amend the complaint to (1) name UFCC as an additional defendant, (2) add the assigned claims against UFCC, and (3) add two individual Pedestrians as Plaintiffs. *See* Hoyal Decl. (Dkt. # 42), Ex. 1. UFCC removed the King County action to federal court on April 13, 2010. *See Estate*

of *Kathy Cook v. United Fin. Cas. Co.*, 2:10-CV-00627RSL. The Plaintiffs in that case moved to remand, and their motion was granted on June 24, 2010.

In this case, Directional Solutions voluntarily dismissed its counterclaim on June 4, 2010. The Defendants — who are the Pedestrians (for themselves and as assignees of Directional Solutions and the Cardona-Lopezes) — now request that, in light of the King County action, this court exercise its discretion under the Federal Declaratory Judgment Act to abstain from hearing this lawsuit.

### III.   ANALYSIS

**A.   Legal Standards.**

The Declaratory Judgment Act ("DJA") permits federal courts to, in a case within its jurisdiction (with some exceptions not applicable here), "declare the rights and other legal regulations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a). The DJA merely permits but does not require federal courts to issue declaratory judgments; the Supreme Court has explained that the DJA's "textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).

The *Wilton* court went on to explain that federal courts may exercise their discretion not to exercise jurisdiction in favor of "parallel state litigation." 515 U.S. at 281 (citing, *inter alia*, *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942)). In exercising that discretion, the *Wilton* court noted that the *Brillhart* court suggested a consideration of factors including "'the scope of the pending state court proceeding and the nature of defenses open there,'" and "'whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties

ORDER - 3

have been joined, whether such parties are amenable to process in that proceeding, etc.'" *Wilton*, 515 U.S. at 283 (quoting *Brillhart*, 316 U.S. at 495).

The Ninth Circuit has noted that while the *"Brillhart* factors remain the philosophic touchstone for the district court," other considerations for the district court include

> "Whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies."

*Govt. Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 n.5 (9th Cir. 1998) (quoting *American States Ins. Co. v. Kearns*, 15 F.3d 142, 145 (9th Cir. 1994) (J. Garth, concurring)).

**B.     The Court Exercises its Discretion to Abstain From Hearing This Suit.**

The Defendants argue that the *Brillhart* factors weigh in favor of abstention, while UFCC argue the opposite. Though UFCC's Opposition is devoted in part to arguing that the court should not abstain due to the existence of Directional Solutions' counterclaim requesting monetary relief, Directional Solutions has since dismissed its counterclaim. *See* Notice of Voluntary Dismissal (Dkt. # 44). Thus, because the counterclaim no longer provides a basis for opposition to abstention, the court will only address the remaining issue in dispute: whether an application of the *Brillhart* factors[1] suggests that this lawsuit should proceed in federal court.

---

[1] The parties' briefing focuses on three factors — avoiding needless determination of state law issues, discouraging forum shopping, and avoiding duplicative and/or piecemeal litigation — and thus the court's order will focus on those factors as well. *See* Pltf.'s Opp'n (Dkt. # 43) at 8:21.

ORDER - 4

### 1. This Lawsuit Requires a Determination of State-Law Issues.

The parties agree that this lawsuit involves only questions of state law. *Compare* Defs.' Mot. (Dkt. # 41) at 9 ("The substantive issues are governed entirely by state law.") *with* Pltf.'s Opp'n at 6 ("[T]his action admittedly involves issues of state, not federal law."). Nonetheless, UFCC contends that this factor does not favor abstention because the state-law issues are either not novel, or to the extent that novel questions are raised, Washington's appellate courts have provided extensive guidance. *See* Pltf.'s Opp'n at 6.

The court does not find UFCC's argument compelling, because it does not speak to the inquiry before the court in considering this factor. The issue is not whether the state-law issues are novel, but whether this case would constitute a "gratuitous interference" by a federal court into state-law issues. Furthermore, courts have indicated that the states have a particular interest in regulating its laws related to insurance. *See Dizol,* 133 F.3d at 1232 (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1998), and *Allstate Ins. Co. v. Mercier*, 913 F.2d 273 (6th Cir. 1990)). Because it is undisputed that this case presents questions of state insurance law only, the court concludes that abstention would avoid undue federal interference.

### 2. This Lawsuit is Not Reactive to the King County Lawsuit Because the Suits Did Not Assert any Identical Claim at the Time the Federal Suit was Filed.

The parties agree that district courts should, to discourage forum shopping, abstain from hearing a declaratory judgment action that is "reactive" to an identical state court suit. *Compare* Defs.' Mot. at 9-10 *with* Pltf.'s Opp'n at 7 (both citing *Dizol*, 133 F.3d at 1225). The parties dispute whether this federal lawsuit is reactive, in light of the fact that this case was filed before the state-court Plaintiffs added their claim for a declaratory judgment. As the Defendants here note, timing is not

ORDER - 5

determinative, in the sense that it is not necessarily true that the later lawsuit is reactive to the first:

> [An] insurer may anticipate that its insured intends to file a non-removable state court action, and rush to file a federal action before the insured does so. . . . Whether the federal declaratory judgment action regarding insurance coverage is filed first or second, it is reactive, and permitting it to go forward when there is a pending state court case presenting the identical issue would encourage forum shopping in violation of the second *Brillhart* principle.

*Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1372-73 (9th Cir. 1991), *overruled on other grounds by Dizol*, 133 F.3d 1220.

In this case, the original underlying King County lawsuits were filed in 2007 and 2008 and consolidated in 2008. Directional Solutions and the Cardona-Lopezes tendered the lawsuits to UFCC for defense and indemnification, and UFCC provided for their defense and participated in settlement negotiations with the Pedestrians. *See* Complaint ¶ 19. UFCC thereafter filed this lawsuit in February 2009. Pedestrians added claims against UFCC, including a claim for a declaratory judgment regarding coverage, in the King County lawsuit in their amended complaint filed in March 2010. Thus, this is not the situation described in *Robsac*, because the pending state-court case did not present the identical issue at the time the federal declaratory judgment action was filed. At the time the federal action was filed, UFCC was not a defendant in the state action, and there were no pending claims for a declaration regarding coverage. Because these facts distinguish this case from *Robsac*, the court concludes that this factor does not weigh in favor of abstention.

### 3. This Lawsuit is Duplicative of the King County Action.

Though UFCC removed the King County action to this judicial district, it has now been remanded to state court. *See* Defs.' Mem. (Dkt. # 49). Thus, that case will

ORDER - 6

proceed in King County on all of the pending claims in that lawsuit, including the Pedestrians' request for a declaration of coverage. This lawsuit presents that same issue, but does not present all the other claims at issue in the state-court lawsuit.

Thus, UFCC's arguments suggesting that this lawsuit would not be duplicative are mooted by the remand of the state-court action to King County. Because this lawsuit presents only one but not all of the issues presented in the first-filed state action, to allow this suit to proceed to result in duplicative and piecemeal litigation. *See Kearns*, 15 F.3d at 145 (holding that district courts should abstain if the federal suit will not "settle all aspects of the controversy"). This is precisely the result that *Brillhart* abstention seeks to avoid, and thus the court finds that this factor weighs strongly in favor of abstention.

Because two of the three *Brillhart* factors weigh in favor of abstention, the court will exercise its discretion to abstain and dismiss this suit.

## IV.   CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion (Dkt. # 41).

DATED this 12th day of August, 2010.

The Honorable Richard A. Jones
United States District Judge

ORDER - 7